CIVIL SETTLEMENT AGREEMENT

This Civil Settlement Agreement ("Agreement") is entered into by and among: (A) the United States of America, acting through the United States Attorney's Office for the Northern District of New York and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") and the Defense Health Agency ("DHA") on behalf of the TRICARE Program (collectively, the "United States"); (B) Dougherty Pharmacy, Inc., and Jennifer Caloia (collectively, "Caloia"); and (C) Colin Valenta ("Relator"). The United States, Caloia and Relator are hereafter collectively referred to as "the Parties."

RECITALS

The Parties agree to the following:

A.      This Agreement addresses the United States' civil claims against Caloia for the conduct described in the Information in United States v. Jennifer Caloia, 20-cr-277 (the "Information").

B.      As alleged in the Information, Jennifer Caloia was a licensed pharmacist who owned and operated an independent pharmacy (the "Pharmacy") in Morrisville, New York, in Madison County in the Northern District of New York.

C.      Between approximately January 1, 2011, through and including approximately July 21, 2015, Jennifer Caloia devised and executed a scheme to defraud private insurers, as well as the following public health care benefit programs: Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare"); the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"); and the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE") (collectively, the "Programs"). As concerns the Programs, Caloia's scheme involved submitting false and fraudulent claims to the Programs for reimbursement for prescription drugs that the Pharmacy

did not dispense.  Specifically, for certain prescription drugs, when a customer would come in with a prescription, Caloia would bill the Programs for a drug that was more expensive than the prescribed medication, and the defendant would then dispense the less expensive prescribed medication to the customer.  In some instances, the Pharmacy did not have—and thus could not have dispensed—the prescription drugs for which it billed the Programs.  Caloia modified the names of certain prescription drugs in the Pharmacy's software, which allowed Caloia to bill the Programs for more expensive drugs than the ones prescribed for the Pharmacy's customers while allowing Caloia to print labels for the customers that listed the drugs that were actually dispensed (and described). In other words, the patients received the prescribed drugs along with appropriate labels and instructions without realizing that Caloia was charging the Programs for more than she should have by billing for other drugs that were not dispensed. The foregoing conduct constitutes the "Covered Conduct" in this Agreement. Caloia engaged in the Covered Conduct with the knowledge and intent to submit false claims to the Programs.

D.    On January 27, 2017, Colin Valenta filed a *qui tam* action in the United States District Court for the Northern District of New York captioned *United States and State of New York ex rel. Valenta v. Dougherty Pharmacy, Inc., and Jennifer Caloia*, 6:17-cv-92 (BKS/ATB), pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"), alleging that Caloia falsely billed government payors for higher-reimbursing drugs than what she had disbursed and that she had modified the pharmacy's label dispensing software to conceal the fraud. The United States intervened in the Civil Action on September 30, 2020.

E.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

F.      The Civil Action also alleges claims on behalf of the State of New York.  The claims of the State of New York are resolved in a separate agreement.

G.      Caloia has entered into a plea agreement with the United States Attorney for the Northern District of New York pursuant to which, if accepted by the Court, Caloia will enter a plea of guilty pursuant to Fed. R. Crim. P. 11 to Count 1 of the Information.  Caloia's criminal plea agreement will include payment of criminal restitution of $110,431.02, $30,421.35 of which shall be deemed satisfied by payment of the Settlement Amount described below.

H.      To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.      Caloia shall pay to the United States and the State of New York the total sum of $92,308.76 (the "Settlement Amount"), of which $46,154.38 is civil restitution, which shall be paid as follows:

        a.      Caloia shall pay to the United States the sum of $55,193.36 (the "Federal Settlement Amount"), no later than fifteen days after the Effective Date of this Agreement. Payment to the United States of the Federal Settlement Amount shall be made by electronic funds transfer to the United States Department of Justice in accordance with written instructions to be provided by the United States Attorney's Office for the Northern District of New York prior to or upon its execution of the Agreement.

3

b.      Caloia shall pay to the State of New York the sum of $37,115.40 (the "State Settlement Amount") pursuant to the terms of a settlement agreement that Caloia has entered into or will enter into with the State of New York.

2.      Conditioned upon the United States receiving the Federal Settlement Amount from Caloia and as soon as feasible after receipt, the United States shall pay $11,038.67 to Relator by electronic funds transfer.

3.      Caloia shall pay to the Relator $34,669.23 in full satisfaction of Relator's claims for attorneys' fees, expenses and costs pursuant to 31 U.S.C. § 3730(d) in connection with the Civil Action, no later than fifteen days after the Effective Date of this Agreement by electronic funds transfer.

4.      Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and conditioned upon Caloia's full payment of the Settlement Amount, the United States releases Jennifer Caloia and Dougherty Pharmacy, Inc., from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5.      Subject to the exceptions in Paragraphs 6 and 7 below, and conditioned upon Caloia's full payment of the Settlement Amount, Relator, for himself and for his family members, heirs, attorneys, agents, transferees, successors, assigns and other firms, partnerships or corporations with whom Relator has been or is now affiliated (collectively, the "Relator Releasors"), releases  (a) Jennifer Caloia; (b) Dougherty Pharmacy, Inc., together with its predecessors and current and former owners, directors, officers, employees, attorneys and agents; and (c) the transferees, successors and assigns of any of them (collectively, the "Caloia

4

Releasees"), from any claims that the Relator Releasors have asserted, could have asserted, or may assert in the future against the Caloia Releasees that refer or relate in any respect to the Covered Conduct or any claims Caloia submitted to public or private health care programs, including insurance companies, prior to the time period included in the Covered Conduct; provided, however, that nothing in this release shall be deemed to release the Caloia Releasees from their obligations under this Agreement or the Sale Agreement, dated February 23, 2015, between Dougherty Pharmacy, Inc., Jennifer Caloia and Christopher Klein, on the one hand, and the Relator, CMV Properties, LLC, a New York limited liability company ("CMV Properties"), and CMV Pharmacy, Inc., a New York corporation ("CMV Pharmacy"), on the other (the "Sale Agreement").

6.      Notwithstanding the releases given in paragraphs 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

c.      Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement;

f.      Any liability of individuals who are not parties to this Agreement.

7.      Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under

all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon Relator's receipt

of the payment described in Paragraph 2, Relator and his heirs, successors, attorneys, agents, and

assigns fully and finally release, waive, and forever discharge the United States, its agencies,

officers, agents, employees, and servants, from any claims arising from the filing of the Civil

Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this

Agreement and/or the Civil Action.

8.      Caloia waives and shall not assert any defenses Caloia may have to any criminal

prosecution or administrative action relating to the Covered Conduct that may be based in whole

or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the

Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution,

this Agreement bars a remedy sought in such criminal prosecution or administrative action.

9.      Caloia fully and finally releases the United States, its agencies, officers, agents,

employees, and servants, from any claims (including attorney's fees, costs, and expenses of

every kind and however denominated) that Caloia has asserted, could have asserted, or may

assert in the future against the United States, its agencies, officers, agents, employees, and

servants, related to the Covered Conduct and the United States' investigation and prosecution

thereof.

10.     Jennifer Caloia, for herself and for her family members, heirs, attorneys, agents,

transferees, successors, assigns and other firms, partnerships or corporations with which Jennifer

Caloia has been or is now affiliated (collectively, the "Caloia Releasors"), releases (a) the

Relator; (b) CMV Properties and CMV Pharmacy, together with their predecessors and current

and former owners, directors, officers, employees, attorneys and agents; and (c) the transferees,

successors and assigns of any of them (collectively, the "Relator Releasees"), from any claims

that the Caloia Releasors have asserted, could have asserted, or may assert in the future against

6

the Relator Releasees that refer or relate to the Covered Conduct or any claims Caloia submitted

to public or private health care programs, including insurance companies, prior to the time period

included in the Covered Conduct; provided, however, that nothing in this release shall be deemed

to release the Relator Releasees from their obligations under this Agreement or the Sale

Agreement.

        11.    The Settlement Amount shall not be decreased as a result of the denial of

claims for payment now being withheld from payment by any Medicare contractor (e.g.,

Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to

the Covered Conduct; and Caloia agrees not to resubmit to any Medicare contractor or any state

payer any previously denied claims related to the Covered Conduct, agrees not to appeal any

such denials of claims, and agrees to withdraw any such pending appeals.

        12.    Caloia agrees to the following:

        a.    <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal

Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social

Security Act, 42 U.S.C. §§ 1395-1395lll-1 and 1396-1396w-5; and the regulations and official

program directives promulgated thereunder) incurred by or on behalf of X, its present or former

officers, directors, employees, shareholders, and agents in connection with:

        (1)    the matters covered by this Agreement and the related plea agreement;

        (2)    the United States' audit(s) and civil and criminal investigation(s) of the matters covered by this Agreement;

        (3)    Caloia's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

      (4)     the negotiation and performance of this Agreement and related Plea

               Agreement; and

      (5)     the payment Caloia makes to the United States pursuant to this Agreement

               and any payments that Caloia may make to Relator, including costs and

               attorneys fees,

are unallowable costs for government contracting purposes and under the Medicare Program,

Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program

(FEHBP) (hereinafter referred to as Unallowable Costs).

      b.     <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be

separately determined and accounted for by Caloia, and Caloia shall not charge such

Unallowable Costs directly or indirectly to any contracts with the United States or any State

Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost

statement, information statement, or payment request submitted by Caloia or any of its

subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

      c.     <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>:

Caloia further agrees that within 90 days of the Effective Date of this Agreement it shall identify

to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and

Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph)

included in payments previously sought from the United States, or any State Medicaid program,

including, but not limited to, payments sought in any cost reports, cost statements, information

reports, or payment requests already submitted by Caloia or any of its subsidiaries or affiliates,

and shall request, and agree, that such cost reports, cost statements, information reports, or

payment requests, even if already settled, be adjusted to account for the effect of the inclusion of

the Unallowable Costs.  Caloia agrees that the United States, at a minimum, shall be entitled to

recoup from Caloia any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.  Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies.  The United States reserves its rights to disagree with any calculations submitted by Caloia or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Caloia or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

        d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Caloia's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

13.     Caloia agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement.  Upon reasonable notice, Caloia shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals.  Caloia further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

14.     This Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity, except to the extent expressly provided for in Paragraph 15 (waiver for beneficiaries paragraph), below, and Paragraph 5 and 10 above.

15. Caloia waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

16. Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

17. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

18. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

19. This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Northern District of New York.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

20. This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

21. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

22. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

23. This Agreement is binding on Caloia's successors, transferees, heirs, and assigns.

24. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

25.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

26.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**\*\*\*\*SIGNATURES APPEAR ON FOLLOWING PAGE\*\*\*\***

## THE UNITED STATES OF AMERICA

DATED: 9/30/2020

ANTOINETTE T. BACON
Acting United States Attorney

BY: _John Hoggan_

John D. Hoggan, Jr.
Assistant United States Attorney
Bar Roll No. 511254

DATED: 09/30/2020   BY: _Lisa M. Re_

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

## JENNIFER CALOIA and DOUGHERTY PHARMACY, INC.

DATED: _____   BY: _____

Jennifer Caloia, Individually and on behalf of Dougherty
Pharmacy, Inc.

DATED: _____   BY: _____

J. David Reich, Esq.
Counsel for Jennifer Caloia and Dougherty Pharmacy, Inc.

## COLIN VALENTA

DATED: _____   BY: _____

Colin Valenta

DATED: _____   BY: _____

Benjamin Hill, Esq.
Counsel for Colin Valenta

## THE UNITED STATES OF AMERICA

DATED: _____         ANTIONETTE T. BACON
                          Acting United States Attorney

                  BY:     _____
                          John D. Hoggan, Jr.
                          Assistant United States Attorney
                          Bar Roll No. 511254

DATED: _____   BY:   _____
                          LISA M. RE
                          Assistant Inspector General for Legal Affairs
                          Office of Counsel to the Inspector General
                          Office of Inspector General
                          United States Department of Health and Human Services

## JENNIFER CALOIA and DOUGHERTY PHARMACY, INC.

DATED: 9/30/2020   BY:    *J Caloia*
                          Jennifer Caloia, Individually and on behalf of Dougherty
                          Pharmacy, Inc.

DATED: 9/30/2020   BY:    *J. David Reich*
                          J. David Reich, Esq.
                          Counsel for Jennifer Caloia and Dougherty Pharmacy, Inc.
                          *Admission Pending*

## COLIN VALENTA

DATED: _____   BY:   _____
                          Colin Valenta

DATED: _____   BY:   _____
                          Benjamin Hill, Esq.
                          Counsel for Colin Valenta

12

### THE UNITED STATES OF AMERICA

DATED: _____          ANTIONETTE T. BACON
                          Acting United States Attorney


                    BY: _____
                          John D. Hoggan, Jr.
                          Assistant United States Attorney
                          Bar Roll No. 511254


DATED: _____    BY: _____
                          LISA M. RE
                          Assistant Inspector General for Legal Affairs
                          Office of Counsel to the Inspector General
                          Office of Inspector General
                          United States Department of Health and Human Services


### JENNIFER CALOIA and DOUGHERTY PHARMACY, INC.


DATED: _____    BY: _____
                           Jennifer Caloia, Individually and on behalf of Dougherty
                           Pharmacy, Inc.


DATED: _____    BY: _____
                          J. David Reich, Esq.
                          Counsel for Jennifer Caloia and Dougherty Pharmacy, Inc.


### COLIN VALENTA

DATED: _9/29/20_    BY: _____
                          Colin Valenta


DATED: _9.30.2020_  BY: _____
                          Benjamin Hill, Esq.
                          Counsel for Colin Valenta


12